STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**November 8, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.U. Jr., A.U., J.F., and T.F.**

**No. 20-0563** (Kanawha County 19-JA-156, 19-JA-157, 19-JA-158, and 19-JA-337)

**MEMORANDUM DECISION**

Petitioner Mother L.F., by counsel Elizabeth G. Kavitz, appeals the Circuit Court of Kanawha County's June 29, 2020, order terminating her parental rights to A.U. Jr., A.U., J.F., and T.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Matthew Smith, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first assuring her learning difficulties were accommodated during reunification services.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2019, the DHHR filed a child abuse and neglect petition that detailed a history of referrals and the current abuse and neglect of A.U. Jr., A.U., J.F. The DHHR first alleged that petitioner had an "open case" since February of 2017, when it substantiated allegations that petitioner failed to provide necessary supervision to the children. Additionally, the DHHR alleged that petitioner was aware that then twelve-year-old A.U. was "acting out sexually and inappropriately" toward nine-year-old A.U. Jr. and that she failed to seek services for the children. Further, the DHHR alleged that in August of 2018, it received another referral

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

concerning petitioner's abuse of controlled substances, failure to care for the children, and failure to maintain an appropriate home for the children. Upon investigation, a DHHR worker observed petitioner's home to be in an unlivable condition. The DHHR alleged that petitioner admitted to using Suboxone without a valid prescription, admitted that her boyfriend also used Suboxone without a valid prescription, and admitted that the children were truant. The DHHR also alleged that petitioner's boyfriend had been arrested for domestic violence against petitioner. Finally, the DHHR noted that petitioner was five months pregnant and that she admitted to inconsistent prenatal care despite having a "high-risk" pregnancy. Petitioner waived her preliminary hearing.

In May of 2019, following the birth of T.F., the DHHR filed an amended petition, naming T.F. as an infant respondent in the proceedings. The DHHR alleged that, while petitioner was pregnant with T.F., petitioner tested positive for amphetamines, methamphetamines, and admitted to using heroin, Adderall, and Suboxone. The circuit court convened for an adjudicatory hearing later that month, and petitioner stipulated to the allegations in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Thereafter, petitioner moved for a post-adjudicatory improvement period, which the circuit court granted. The terms of petitioner's improvement period required that she participate in random drug screening, parenting and adult life skills classes, supervised visitation, a parental fitness evaluation, and domestic violence counseling.

Petitioner submitted to a parental fitness evaluation, and a report was completed and submitted to the circuit court in June of 2019. The evaluator reported that petitioner's intelligence quotient test score was suggestive of a mild intellectual disability and her neurocognitive screening score "fell in the 'dementia' range." The evaluator suggested that, while the disability did not preclude petitioner from achieving minimally adequate parenting, the disability might make it more difficult for petitioner to meaningfully engage in services. The evaluator rendered a "highly guarded" prognosis that petitioner could obtain minimally adequate parenting in light of her chronic substance abuse and dependence, minimization of that use, neglect of her children's basic needs, her defensive responses during the evaluation, and her intellectual limitations. The evaluator recommended many of the services the DHHR was already providing petitioner. Notably, the evaluator did not recommend particular measures to accommodate petitioner's mild intellectual disability.

The circuit court held review hearings in July of 2019 and October of 2019. At both hearings, the DHHR announced that petitioner was substantially compliant with the terms of her improvement period and requested that services continue.

The circuit court held a third review hearing in December of 2019. The DHHR noted that petitioner had difficulty controlling the children during visitation and was discussing reunification with the children during visitation, which had upset A.U., who stated that she did not want to live with petitioner in the future. Additionally, petitioner submitted to only one random drug screen in the preceding two months. When questioned about her failure to comply with random drug screening, petitioner testified that she had "been sleeping a lot." Petitioner asserted that she had been diagnosed with fibromyalgia and scoliosis, which caused her chronic pain. When asked how this affected her ability to submit to drug screening, petitioner stated that she had not been calling due to the pain. The circuit court ordered petitioner to provide

documents related to her diagnosis, and, in response to petitioner's oral motion for an extension, continued the proceedings for sixty days. There is no evidence in the record that documents concerning petitioner's alleged diagnoses were provided to the circuit court.

The circuit court convened for a subsequent review hearing in February of 2020. The DHHR noted that concerns continued to arise during petitioner's supervised visitation with the children. A DHHR worker testified that service providers "have to intervene very frequently for different things" during visitation. The worker further explained that petitioner should have progressed to unsupervised visitations, but the DHHR could not recommend progression based on the issues present during the supervised visitations. The circuit court concluded that petitioner had not substantially complied with her improvement period.

In June of 2020, the circuit court held the final dispositional hearing. Petitioner's visitation supervisor testified that she observed petitioner struggling to "give all of her attention to all of the children" during visitations and appeared to become overwhelmed when one of the children would act out. The supervisor reported that "visits are usually chaotic. [A.U.] and [A.U. Jr.] are loud and constantly fighting . . . . When the kids fight, [petitioner] seems to lose her focus. She will try to discipline them, but the kids won't listen[,] or she will get distracted." The supervisor noted that petitioner failed to secure T.K.'s car seat in the vehicle, such that it was not anchored by any means, and that she also forgot to change the child's diaper during the visit. The supervisor testified that she did not believe that petitioner could care for the children without assistance. The supervisor clarified that visitation became more difficult after T.K. was born. Since T.K.'s birth, petitioner focused her attention on him and had difficulty responding to the other three children.

The DHHR's case manager testified that the DHHR was seeking termination of petitioner's parental rights. The case manager stated that despite the DHHR's provision of services since March of 2019, petitioner could not adequately care for her children. She explained that petitioner struggled with disciplining the children and that the visitation supervisors would have to intervene with discipline and with general care for the children. Petitioner also "struggled to . . . keep up with day-to-day functions," such as keeping appointments, and keeping essential items, such as her bus pass and identification cards. The case manager testified that upon petitioner's request, visitations with the older children and T.K. were split. The parties agreed that prior to reunification, petitioner would need to demonstrate an ability to care for all four children at once during visitations; however, when visitations with all four children resumed early in 2020, petitioner exhibited the same issues and had made no progress in that regard.

Petitioner disagreed that she had difficulty managing the children during visitation. She further testified that she had an appropriate home for the children. Petitioner stated that she maintained employment and worked near full-time hours, which were expected to increase. Finally, petitioner requested further opportunity to participate in services and to demonstrate her ability to parent.

Ultimately, the circuit court found that petitioner had been unable to show the responsibility needed to be a parent, as evidenced by her failure to participate in drug screens for

multiple months during the proceedings, inability to mix formula for infant T.K., calling A.U. "a liar during a supervised visitation," purchasing the wrong size diapers for T.K., and failing to buckle the infant's car seat on multiple occasions. It decided that petitioner lacked the capacity and ability to understand her deficiencies in parenting. The court further found that the DHHR had exhausted all efforts to reunify petitioner with the children. Finally, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. Petitioner now appeals the circuit court's June 29, 2020, order that terminates her parental rights to the children.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first considering whether the DHHR provided her reasonable accommodations in accordance with the Americans with Disabilities Act.[3] Petitioner relies on her parental fitness evaluation to prove that she had a "mild intellectual disability," which required reasonable accommodation from the DHHR. She asserts that West Virginia Code § 49-4-604(c)(5) requires circuit courts to consider whether the DHHR provided reasonable accommodations when the court finds that the parent is "presently unwilling or unable to provide adequately for the child's needs." Petitioner correctly states the circuit court made no finding in this regard.

---

[2]The fathers' respective parental rights have been terminated below. According to the parties, the siblings have been separated. The permanency plan for A.U. Jr. and T.K. is adoption in their respective foster placements. The permanency plan for A.U. is legal guardianship with her paternal grandmother. Finally, the permanency plan for J.F. is continuation in his current placement.

[3]*See* 42 U.S.C. § 12101.

West Virginia Code § 49-4-604(c) provides a series of dispositional options that a circuit court may impose and requires that the circuit court give "precedence to dispositions" in the sequence that they are listed, with termination of parental rights considered the "most drastic" dispositional alternative. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Petitioner's argument centers on the factors that the circuit court shall include in its order if it first finds that a parent is "presently unwilling or unable to provide adequately for the child's needs." *See* W. Va. Code § 49-4-604(c)(5). However, petitioner fails to recognize that the circuit court did not make that finding in this case. Rather, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of parental rights was in the children's best interests, which is the requisite finding to terminate a parent's parental rights under West Virginia Code § 49-4-604(c)(6). West Virginia Code § 49-4-604(c)(6) does not require the circuit court to include the same findings as West Virginia Code § 49-4-604(c)(5), and, therefore, we find no error in the circuit court's omission of this finding.

Further, we find that the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future is supported by the record. West Virginia Code § 49-4-604(d)(3) provides that such conditions exist when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[ren].

As presented above, the circuit court found that petitioner did not substantially comply with her improvement period due, in part, to her failure to participate in random drug screening for a two-month period. Moreover, the circuit court found that petitioner had been unable to show the responsibility needed to be a parent, as evidenced by her failure to participate in drug screens for multiple months during the proceedings, inability to mix formula for infant T.K., calling A.U. "a liar during a supervised visitation," purchasing the wrong size diapers for T.K., and failing to buckle the infant's car seat on multiple occasions. Despite instruction from service providers, petitioner's inadequacies continued unabated and threatened the health and welfare of the children.

The circuit court also found that petitioner lacked the capacity and ability to understand the deficiencies in her parenting. This Court has held:

> "Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such

case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W. Va. 512, 678 S.E.2d 18 (2009). As we explained in *Maranda T.*, this holding does not require that the DHHR provide extensive long-term services. *Id*. at 519, 678 S.E.2d at 25. Similar to this proceeding, we found in *Maranda T.* that fourteen months of services, without benefit, was sufficient to determine whether a parent had the capacity to learn the skills necessary to parent her children. *Id*. As stated above, petitioner was provided services throughout the fifteen-month-long proceedings, which is a sufficient period of time to determine whether she could adequately parent her children. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 29, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6